IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

LORI L. VOGT,

        Plaintiff,

v.                                                                         Case No. 21-cv-0104-JWB

MCINTOSH COUNTY, OKLAHOMA, BOARD
OF COUNTY COMMISSIONERS; and LISA
RODEBUSH, *McIntosh County Court Clerk,*
*in her individual capacity*,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motion for summary judgment. (Doc. 40.) The motion is fully briefed and is ripe for decision. (Docs. 47, 49.) For the reasons set forth herein, the motion for summary judgment is GRANTED IN PART and DENIED IN PART.

**I. Facts**

The court finds the following facts to be uncontroverted for purposes of summary judgment. In keeping with the standards governing summary judgment, all facts and the reasonable inferences therefrom are viewed in the light most favorable to Plaintiff, the non-moving party.

Plaintiff Lori Vogt (hereinafter "Plaintiff") and Defendant Lisa Rodebush (hereinafter "Rodebush") were both longstanding employees of the McIntosh County Clerk's Office. When the previous Court Clerk retired in 2016, Plaintiff and Rodebush both ran for the position of Court Clerk. Rodebush won the 2016 election. She kept Plaintiff on as a Deputy Court Clerk. (Doc. 40 at 1-2.)

In 2020, Rodebush was running for reelection. Before the filing period, Plaintiff informed Rodebush that she was not going to run against Rodebush and would instead support Rodebush in her reelection campaign. During the filing period in March of 2020, however, Plaintiff learned that her best friend, Kim Metcalf, whom Plaintiff considered to be like a sister, was going to run against Rodebush. Despite Plaintiff's close relationship with Metcalf, Plaintiff believed Rodebush did a good job as Court Clerk and would do a better job than Metcalf. Upon learning that Metcalf was running, Plaintiff immediately called Rodebush and informed her. Plaintiff told Rodebush that although she still supported her reelection, she would not do so openly, meaning she would not comment or share anything in support of either candidate in a public forum, such as Facebook. (*Id.* at 2-3.)

Plaintiff helped Rodebush's campaign in various ways, including by providing information on how to obtain campaign shirts, taking group photos for use in campaign materials, making sure campaign materials made it to local businesses, giving advice on distribution of campaign materials during the Old Settlers Day parade, and going door-to-door to campaign for Rodebush during off-hours. Plaintiff did everything Rodebush asked her to do except offer open public support. Plaintiff did not want her best friend Metcalf to know she supported Rodebush because she did not want to hurt her feelings.

Rodebush did not believe Plaintiff was actively and publicly supporting her. On June 10, 2020, Rodebush angrily confronted Plaintiff about it. According to Plaintiff, Rodebush was mad and told Plaintiff that she had "apparently … forgot what support is" and said, "let me refresh your memory." (Doc. 47-4 at 8.) Rodebush complained that Plaintiff was not openly working for her reelection like she had done for a prior candidate, Judge Brendon Bridges. (*Id.* at 7-8.) Plaintiff responded that she had in fact supported Bridges and that she hadn't "forgotten what support is,"

2

but that she had told Rodebush that she would not openly support her. (*Id.* at 8.) Rodebush told Plaintiff that "if you can't support me that way openly, I would just rather you not say anything." (Doc. 47-3 at 14.) Plaintiff was upset and crying. She asked Rodebush why she was telling people that if she wasn't reelected, she would lose her job and insurance and would have to file bankruptcy. Plaintiff had heard from others that Rodebush was telling people this. Plaintiff considered it inappropriate to campaign in this manner. Rodebush conceded in her deposition that "on occasion" she had told people that if she lost the election she would lose her retirement and her insurance. (Doc. 47-3 at 5.) Rodebush was mad; she did not speak to Plaintiff from that day forward.[1] (*Id.*)

Plaintiff testified that Rodebush thereafter ignored her and had no conversation with her. For example, at one point Plaintiff gave Rodebush a form for preapproval of supplies that had to be ordered. Rodebush just took the form from her and said nothing. (*Id.* at 14.) Plaintiff testified that after June 10, when Rodebush would come into the office she had to walk by Plaintiff's desk on the way to her own desk, and that Rodebush would say hello to some of the other employees but not to Plaintiff. (Doc. 47-4 at 14.)

The election took place on June 20, 2020. Rodebush won. (Doc. 40 at 11.)

Prior to work on the morning of July 8, 2020, Plaintiff reported that she could not come in to work that day and was taking sick leave to obtain treatment for blisters in her mouth. Rodebush contends this caused disruption because she and another employee were already scheduled to be out of the office. The record contains a text message exchange between Plaintiff and Rodebush from the morning of July 8:

---

[1] Rodebush sets forth a version of the conversation based on facts that are clearly contradicted by Plaintiff's sworn testimony. Rodebush effectively concedes as much, stating that "Plaintiff characterizes the conversation somewhat differently…." (Doc. 40 at 10.) Under the standards governing summary judgment, the court views the facts in the light most favorable to Plaintiff, the non-moving party.

> [Plaintiff:] Won't be there today going to try & get back in to the dentist.
>
> [Rodebush:] Well Donna and I both was [sic] scheduled to be off today so if you was [sic] having a problem it would have been nice to know ahead of time!
>
> [Plaintiff:] Well you see they come & go and the roof of my motifs [*sic*; should be "mouth is"] full of blisters again I didn't ask for nor know they were gonna come up again all I know is they hurt sorry for the inconvenience

(Doc. 47-8.) Rodebush did not respond. (Doc. 40-3 at 26.)

The next day, July 9, Plaintiff came in and gave Rodebush a note from her dentist, as was the practice when sick leave was used, and said "here's my doctor's note and prescriptions." Rodebush took the note but said nothing. (Doc. 47-4 at 18.) According to Plaintiff, Plaintiff attempted to explain her condition, but Rodebush said nothing, and another employee who was there (Deanna Farrow) asked Plaintiff how she was. (Doc. 47-4 at 21.)

The next day, July 10, Plaintiff arrived at the office at 7:45 a.m. Rodebush called Plaintiff back to her desk and said, "Here's your termination paper." (Doc. 40-1 at 72.) Plaintiff asked if she was kidding; Rodebush said no and told her to get her desk cleaned out and get off the premises. (*Id.* at 73.) According to interrogatories completed by Defendants, Rodebush asserts she fired Plaintiff "due to an accumulation of numerous violations of the Employee Personnel Policy Handbook, including insubordination, unsatisfactory job performance, work performance which is below the standards of performance required by the County Clerk's office, failure to maintain a satisfactory and/or harmonious relationships with the public or fellow employees, and abusing the sick leave policy." (Doc. 47-1 at 1-2.) Defendants contend Plaintiff "consistently disrespected the Court Clerk and other employees, ignored the Court Clerk and other employees, failed to communicate with the Court Clerk and other employees, and additionally failed to notify her supervisors (as shown in the text messages) that she was not coming in until that very morning on July 8, causing significant disruption to the office's schedule." (*Id.* at 3.) Additionally, Defendants

assert that on July 9 Plaintiff "refused to speak to the Court Clerk about what happened the day before," which was "the final straw." (*Id.*)

Plaintiff denied under oath that she violated any employment policies or was disrespectful to Rodebush or others. Rodebush never documented any misconduct or disrespect by Plaintiff, nor did she ever say anything to Plaintiff about it. (Doc. 47-3 at 42.) Moreover, Rodebush conceded in her deposition that Plaintiff actually complied with the county's sick leave policy with respect to her leave on July 8. (Doc. 40-3 at 28-29.) Rodebush testified it was just "the way she [Plaintiff] presented it" that Rodebush found objectionable, because Plaintiff said she was taking sick leave instead of asking for permission or saying she needed to take sick leave. (*Id.*)

Plaintiff contends Rodebush fired her because she thought Plaintiff was not sufficiently supportive of Rodebush's reelection campaign. Plaintiff contends Rodebush was the final policymaker for the county on employment matters in the clerk's office, and that Rodebush's termination of her employment was a violation of Plaintiff's First Amendment rights of free speech and political affiliation. (Doc. 61 at 3, 5.) Plaintiff asserts a claim for damages under 42 U.S.C. § 1983. (Doc. 61 at 5.) In their motion for summary judgment, Defendants contend that Plaintiff cannot establish a First Amendment violation and that Rodebush is entitled to qualified immunity on Plaintiff's First Amendment claim. Defendants additionally argue that Plaintiff cannot recover for any alleged violation under the Oklahoma Constitution.

## II.  Standards

### A.  Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are

"genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored, information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence ... of a genuine dispute"; or by "showing that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. 317. The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### B. First Amendment

"The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Snyder v. City of Moab*, 354 F.3d 1179, 1184 (10th Cir. 2003) (quoting *Mason v. Okla. Tpk. Auth.*, 115 F.3d 1442, 1451 (10th Cir. 1997), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011)). According to the Supreme Court, "official pressure upon employees to work for political candidates not of the worker's own choice constitutes a coercion of belief in violation of fundamental constitutional rights." *Connick v. Myers*, 461 U.S. 138, 149 (1983) (citations omitted).

### C. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Valverde by and through Padilla v. Dodge*, 967 F.3d 1049, 1058 (10th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted)). Qualified immunity is designed to protect "all but the plainly incompetent or those who knowingly violate the law." *Soza v. Demsich*, 13 F.4th 1094, 1099 (10th Cir. 2021) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant asserts qualified immunity at the summary judgment stage, it is the plaintiff's burden to prove (1) the defendant violated her constitutional rights; and (2) the law was clearly established at the time of the alleged violation. *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The facts are viewed in Plaintiff's favor, as the non-movant, but "[a]t this stage, the plaintiff's version of the facts must have support in the record." *Lehman v. McKinnon*, No. 20-1312, 2021 WL 4129229, at *2 (10th Cir. Sept. 10, 2021) (citing *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018)).

For purposes of qualified immunity, the law is clearly established if Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits, has found the law to be as the plaintiff maintains. *Tice v. Dougherty*, 846 F. App'x 705, 710 (10th Cir. 2021) (citing *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012)). While there need not be a case exactly on point, existing caselaw must have placed the constitutional issue "beyond debate." *Soza*, 13 F.4th at 1099 (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) and *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 551 (2017)). In other words, "[a] clearly established right is one that is 'sufficiently clear that

every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 577 U.S. at 11–12 (citation omitted).

### III. Analysis

### A. First Amendment claim

Section 1983 provides a remedy for the deprivation of Constitutional rights by persons acting under color of state law. 42 U.S.C. § 1983. Plaintiff asserts that Defendants are liable under this provision for depriving her of First Amendment rights. To establish her First Amendment claim, Plaintiff must cite evidence from which a reasonable jury could find that Plaintiff's political affiliation or beliefs were a substantial or motivating factor in her dismissal, and that her position did not require political allegiance. *See Jantzen v. Hawkins*, 188 F.3d 1247, 1252 (10th Cir. 1999) (citation omitted.) Because Defendants do not challenge the second element,[2] the only question here is whether Plaintiff has cited evidence from which a jury could properly find the first element. When the evidence and all reasonable inferences are drawn in Plaintiff's favor, Plaintiff has clearly cited sufficient evidence to support such a claim.

Plaintiff has cited evidence that once she learned her best friend was running against Rodebush, she told Rodebush that she did not want to publicly support her reelection. A jury could find from the evidence that this lack of public support angered Rodebush. It is undisputed that Rodebush confronted Plaintiff about the issue on June 10, shortly before the election. By Rodebush's own admission, she had had previous discussions with Plaintiff

> about what she would do [to support Rodebush] — like for instance, she would go talk to this person or deliver shirts to this person, but she had to keep it on the down low or be secretive about it. And so I decided to have the conversation with her

---

[2] In determining whether a plaintiff's work requires political allegiance, "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518 (1980). Defendants do not claim in this case (nor have they cited any evidence) that Plaintiff's political allegiance was a requirement for effective performance of her work. *See* Doc. 40 at 16 (Rodebush "does not take a position either way on whether Plaintiff's position required political allegiance.")

8

> and just tell her that if she didn't feel comfortable supporting me openly, that I would rather her not say anything so there wouldn't be any confusion to the public as to why she had to — it had to be kept a secret.

(Doc. 40-2 at 7-8.)  Although Rodebush denies she was angry about the lack of public support, Plaintiff has cited evidence to the contrary, and a jury could find Plaintiff's version more credible.  According to Plaintiff's testimony, Rodebush was mad, initiated the confrontation, and expressly tied her anger to the fact that Plaintiff would not publicly support her, sarcastically saying Plaintiff "must have forgot[ten] what support is" while pointing out that Plaintiff had publicly supported another candidate in the past. (Doc. 47-4 at 8.)  Plaintiff cites evidence that she was left in tears from the confrontation and that Rodebush's behavior towards her dramatically changed thereafter, with Rodebush ignoring Plaintiff and refusing to speak to her, including when Rodebush would walk by her desk and greet other employees but not Plaintiff.  It is undisputed that Rodebush did not talk to Plaintiff after the June 10 incident up until the time Rodebush fired her.  These facts reasonably support an inference that Rodebush retaliated against Plaintiff because of her lack of public support in the election.

The fact that Rodebush sought to justify Plaintiff's termination based on a supposed "abuse" of sick leave only reinforces an inference that Rodebush was actually motivated by anger over Plaintiff's lack of public support for her reelection.  Rodebush's text message to Plaintiff the morning of July 8 chided her for not giving advance warning of the need for sick leave and complained of the disruption it caused, prompting Plaintiff to explain that the condition came on without warning, and to apologize for the inconvenience.  Rodebush not only did not respond to this, she refused to speak to Plaintiff the next day, and then later cited Plaintiff's "abuse" of sick leave as a basis for termination.  Yet in her deposition Rodebush conceded that Plaintiff in fact complied with the sick leave policy.  A jury could conclude that Rodebush's explanation for the termination was not believable and shows that Rodebush likely retaliated against Plaintiff due to

her lack of public support in the election, a point that had clearly led to a falling out between the two only a few weeks before. *See e.g., Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1234 (10th Cir. 2015) (pretext can be inferred from contradictions in the employer's explanation; it raises an inference that the employer did not act for the asserted non-retaliatory reasons). *See also Tice*, 846 F. App'x at 709 ("[T]he temporal proximity combined with Defendant's knowledge of Plaintiff's protected activity supports a reasonable inference that Plaintiff's political association was a substantial factor in her discharge.") A reasonable jury could similarly view Rodebush's assertions of Plaintiff's "disrespect," "lack of communication," and poor work performance as after-the-fact rationalizations whose pretextual nature is indicated, among other things, by the lack of any contemporary documentation or warnings to Plaintiff. If a jury believed Plaintiff's testimony, it could conclude that Rodebush was responsible for the lack of communication with Plaintiff. In sum, Plaintiff has cited evidence from which a reasonable jury could find that Plaintiff's political affiliation or beliefs were a substantial or motivating factor in her dismissal.[3]

Rodebush's arguments to the contrary are unavailing. Those arguments are based largely upon a version of the facts that is at odds with Plaintiff's testimony. On summary judgment, however, the court is obligated to view the facts in favor of the non-moving party. Defendants dismiss Plaintiff's testimony as "self-serving," (Doc. 49 at 2, 3), but the fact that this testimony is favorable to Plaintiff does not make it inadmissible, any more than Rodebush's own testimony would be inadmissible simply because it favors her own interests. This conflicting testimony shows there is a genuine issue of fact as to whether Rodebush fired Plaintiff for failing to publicly support her candidacy. Rodebush also contends that Plaintiff is obliged to "produce evidence

---

[3] The Tenth Circuit has stated that if a plaintiff shows her political affiliation was a substantial or motivating factor in her dismissal, a defendant may avoid liability by establishing that it would have fired the plaintiff even in the absence of the protected conduct. *See Tice v. Dougherty*, 846 F. App'x 705, 708 (10th Cir. 2021) (citing *Walton v. Powell*, 821 F.3d 1204, 1211 (10th Cir. 2016)). Defendants have made no such showing in this case.

linking her termination to her support of Metcalf" (Rodebush's opponent), but that is not so. (*See* Doc. 40 at 16.)   The First Amendment right at issue protects the right not to affiliate with a candidate as well as the right to affiliate with a candidate's political opponent.  Thus, in *Gann v. Cline*, 519 F.3d 1090, 1093 (10th Cir. 2008), the Tenth Circuit pointed out it was "irrelevant" whether the plaintiff campaigned for her boss's opponent or whether she "merely declined to campaign for" her boss. *Id.*

Defendant Board of County Commissioners concedes that Rodebush has final policy-making authority in operating the Clerk's Office, and that the Board may be liable if Plaintiff shows a violation by Rodebush. (Doc. 40 at 14.) It seeks summary judgment based solely on the argument that Plaintiff has failed to cite evidence to support a First Amendment violation. (*Id.*) Because the court finds that Plaintiff has cited sufficient evidence to support a claim for a violation of the First Amendment by Rodebush, it denies the Board's motion for summary judgment.

### B. Qualified Immunity

Defendants contend that Rodebush is entitled to qualified immunity on Plaintiff's § 1983 claim.  To overcome the defense of qualified immunity, Plaintiff must raise a genuine issue of material fact that (1) Defendants' actions violated her constitutional rights; and (2) the right was clearly established at the time of the alleged misconduct. *Paugh v. Uintah Cty.*, 47 F.4th 1139, 1153 (10th Cir. 2022).  For reasons discussed above, the court finds Plaintiff has shown a genuine issue of fact as to whether Rodebush violated Plaintiff's First Amendment right to freedom of belief and association by terminating her employment in retaliation for Plaintiff not publicly supporting Rodebush's reelection campaign.  And for reasons set forth below, the court finds that this right was clearly established at the time of Plaintiff's termination.

The First Amendment provides in part that Congress "shall make no law … abridging the freedom of speech…." U.S. Const., Amend. I. In *Elrod v. Burns*, 427 U.S. 347 (1976), the Supreme Court concluded that employees of a county sheriff's office stated a claim for violation of the First Amendment by alleging that they were discharged "solely because of their partisan political affiliation or nonaffiliation…." *Id.* at 349. A plurality noted that "political belief and association constitute the core of those activities protected by the First Amendment," and said the "threat of dismissal for failure to provide that [political] support unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise." *Id.* at 359. In *Branti v. Finkel*, 445 U.S. 507 (1980), the Court held the dismissal of assistant public defenders based upon their party affiliation violated the First Amendment, noting the First Amendment generally "prohibits the dismissal of a public employee solely because of his private political beliefs," absent a showing that party affiliation was an appropriate requirement for the position involved. *Id.* at 517. In *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990), the Court extended the protections of these cases to promotions, transfers, and hiring decisions involving public employment. The Court reiterated the First Amendment "prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate." *Id.* at 76. In *O'Hare Truck Serv., Inc. v. City of Northlake*, the Supreme Court extended these protections to a government contractor who refused to make a political contribution to a mayor's reelection campaign and who supported the mayor's opponent, only to find himself excluded from a city contract. The Court found the First Amendment was violated "where government retaliates against a contractor … for the exercise of rights of political association or the expression of political allegiance." 518 U.S. 712, 715 (1996). The Court recognized that "patronage does not justify the coercion of a person's

political beliefs and associations," and that absent exceptions not present in the instant case, "[g]overnment officials may not discharge public employees for refusing to support a political party or its candidates…." *Id.* at 714.

The Tenth Circuit has long held that "[t]he First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Snyder*, 345 F.3d at 1184 (citation omitted.) Defendants do not claim that Plaintiff's position required political allegiance. As such, case law makes clear that "a valid § 1983 claim may be asserted … where a public employee is discharged because of … her position regarding a particular candidate for office…." *Id.* at 1184-85. That is precisely what Plaintiff has cited evidence of — that Plaintiff's failure to affiliate herself with and publicly support Rodebush's reelection campaign was the reason Rodebush decided to terminate her employment. The law was clearly established at the time that a governmental employer could not terminate an employee based on the employee's political beliefs or association, including an employee's decision to not support a supervisor's reelection campaign. "Discrimination based on political non-affiliation is just as actionable as discrimination based on political affiliation." *Gann,* 519 F.3d at 1093. As noted in *Gann*, the First Amendment not only protects an employee's right to support candidates; it prevents the government from interfering with its employees' freedom to "not associate" with particular candidates and causes. *Id.* at 1094 (quoting *Rutan*, 497 U.S. at 76).

Based on a long line of Supreme Court, Tenth Circuit, and other case precedents protecting the right of government employees to support—or not support—political candidates of their choice, a reasonable official in Rodebush's position would have known it was a violation of Plaintiff's First Amendment rights to terminate her employment in retaliation for Plaintiff's failure

13

to publicly support Rodebush's candidacy for Court Clerk. As such, Rodebush is not entitled to summary judgment on Plaintiff's § 1983 claim.

### C. Oklahoma Constitution

Defendants move for summary judgment on any claim by Plaintiff for violation of the Oklahoma Constitution, which was asserted by Plaintiff in her complaint in addition to her claim for violation of the United States Constitution under 42 U.S.C. § 1983. (Doc. 2 at 1, 4.)

Although the parties argue extensively over whether or not Oklahoma would recognize such a claim under these facts, the court concludes that a state law claim was not asserted in the Pretrial Order. The initial complaint in this case asserted two claims: a federal claim for violation of the First Amendment redressable under 42 U.S.C. § 1983 and a violation of Plaintiff's "rights of free speech under the Oklahoma Constitution, art 22, § 2." (Doc. 2 at 2-4.) The complaint asserted jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and supplemental jurisdiction over the state law claim by virtue of 28 U.S.C. § 1367. (Doc. 2 at 1-2.) By contrast, the Pretrial Order, which was prepared after the summary judgment briefing, says nothing about a state law claim, refers only to "the First Amendment of the United States Constitution made actionable via 42 U.S.C. § 1983," and asserts jurisdiction based only on federal law. (Doc. 61 at 2) (citing 28 U.S.C. §§ 1331, 1343(a)(3)). The portion of the Pretrial Order setting forth Plaintiff's claims refers only to a First Amendment claim under 42 U.S.C. § 1983. (*Id.* at 5.) The section describing Defendants' defenses similarly refers only to the First Amendment of the United States Constitution. (*Id.* at 5-6.)

A pretrial order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). It supersedes the pleadings filed under Rule 8. *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). As such, "claims, issues, defenses, or theories of damages not

included in the pretrial order are waived even if they appeared in the complaint…." *Id.* Although the court liberally construes the pretrial order to cover legal or factual theories that are embraced by its language, in this instance litigating the claim in the absence of any fair notice in the Pretrial Order of a claim under the Oklahoma Constitution would constitute unfair surprise. Accordingly, Defendants' motion for summary judgment will be granted with respect to this state law claim.

### IV. Conclusion

Defendants' motion for summary judgment (Doc. 40) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Plaintiff's state law claim under the Oklahoma Constitution; such claim is DISMISSED. The motion is DENIED with respect to Plaintiff's § 1983 claim and the defense of qualified immunity. In view of the court's ruling, Defendant Rodebush's motion to strike hearing deadlines (Doc. 67) is DENIED as moot.

IT IS SO ORDERED this 9th day of December, 2022.

*s/ John W. Broomes*
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE